1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11    CRICKET S. BROWN,                    Case No.:  17-CV-2222-WQH(WVG)

12                          Plaintiff,     **REPORT AND**
                                           **RECOMMENDATION ON**
13    v.                                   **CROSS-MOTIONS FOR**
                                           **SUMMARY JUDGMENT**
14    NANCY A. BERRYHILL,

15                          Defendant.     **[Doc. Nos. 16 & 18.]**

16

17

18

19        This is an action for judicial review of a decision of the Commissioner of Social

20   Security ("the Commissioner") denying Plaintiff Cricket Brown's request for a waiver of

21   the recovery of an overpayment of Supplemental Security Income ("SSI") benefits to her

22   under Title XVI of the Social Security Act ("the Act").  42 U.S.C. § 1382.  The parties

23   have filed cross-motions for summary judgment, and the matter is before the undersigned

24   Magistrate Judge for preparation of a report and recommendation.  For the reasons stated

25   below, this Court RECOMMENDS that Plaintiff's motion for summary judgment be

26   GRANTED and that the Commissioner's motion be DENIED.

27   / / /

28   / / /

# I.    BACKGROUND

## A.    Legal Background:  Recovery of Overpaid SSI Benefits

To be eligible for SSI, an unmarried claimant cannot have more than $2,000 in resources in a given month.  42 U.S.C. §§ 1381(a), 1382.  When a claimant receives a monetary settlement award, the SSA treats such funds as income that is countable towards the claimant's monthly resources.  20 C.F.R. § 416.1121(f).  When a claimant receives SSI benefits in a given month while having more than $2,000 in resources, the SSA considers the payment made in that month to be an overpayment.  *See* 20 C.F.R. § 416.537(a) (defining overpayments as a "payment of more than the amount due for any period . . . administered by the Social Security Administration.").  Under 42 U.S.C. section 1383(b), "[w]henever the Commissioner of Social Security finds that more . . . than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall . . . be made by appropriate adjustments in future payments to such individual or by recovery from such individual . . . ."

The foregoing notwithstanding, recovery of the overpayment may nonetheless be waived by the Commissioner if the recipient shows that (1) she was without fault in connection with the overpayment and (2) recovery would defeat the purpose of the SSI program, be inequitable, or impede efficient or the effective administration of Title XVI due to the small amount involved.  *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984) (citation omitted); 20 C.F.R. § 416.550(a)-(b).

## B.    Background of Plaintiff's SSI benefits and Overpayment in September 2011

Plaintiff began receiving SSI benefits on February 1, 1998.  (Doc. No. 18-1 at 2.)[1] On October 4, October 7, and November 28, 2011, and again in October 2012, the SSA informed Plaintiff that she had received a single month's SSI overpayment in the amount of $830.40 that must be repaid.  (R. at 19, 22, 60, 156.)  This overpayment was based on

---

[1] Page citations to documents filed on the docket refer to the electronically-generated page numbers created by the CM/ECF filing system.

Plaintiff receiving in September 2011—but allegedly not reporting to the SSA—a $2,000 settlement award she had received in a lawsuit against Walmart. (R. at 22, 60.)

In December 2012, Plaintiff requested reconsideration of the SSA's decision to recover the September 2011 overpayment. (R. at 65.) The SSA denied Plaintiff's request in February 2013. (R. at 106.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in October 2014. (R. at 107, 217.) On March 27, 2015, the ALJ issued a written decision, determining that Plaintiff was overpaid in the amount of $830.40, was at fault for not reporting the Walmart settlement to the SSA, and found the recovery of the overpayment should not be waived. (R. at 11.)

Plaintiff's April 2017 request for review was denied by the Appeals Council in September 2017, rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review. (R. at 3, 19.) Plaintiff then initiated the current action pursuant to 42 U.S.C. § 405(g).

C.    **Plaintiff's Testimony Before the ALJ**

Plaintiff testified at a hearing before the ALJ on October 2, 2014. (R. at 219, 21.) Plaintiff consented to proceed at the hearing without legal representation. (R. at 221.) She objected to prior overpayment notifications and decisions relating to cumulative overpayments totaling $830.40. (R. at 225.) Plaintiff did not object to admission of evidence items B1 through B26, which are now part of the Record. (R. at 242.) She acknowledged receipt of a settlement payment in the amount of $2,000 from Walmart. (R. at 250.) However, Plaintiff testified she reported this income and provided a document that was purportedly stamped by the SSA in September 2011, which she argued proved she notified the SSA of the award. (R. at 241.) The ALJ made copies of the documents Plaintiff provided him and returned the originals to her. (R. at 242, 262.) The most pertinent document Plaintiff provided the ALJ is Exhibit B26, which was date-stamped on

17-CV-2222-WQH(WVG)

September 23, 2011.[2] (R. at 167-85.) The first page of this document is a cancelled check issued by Plaintiff's former attorneys to her for the Walmart settlement. (R. at 167.)

**D.    The ALJ's Decision**

The ALJ issued a written decision on March 27, 2015. (R. at 11.) Conducting a two-part analysis, the ALJ considered whether (1) Plaintiff's $2,000 Walmart settlement she received in September 2011 was of such value to make Plaintiff ineligible for SSI payments in a set period; and (2) Plaintiff was correctly assessed an overpayment in the amount of $830.42 for a period of SSI eligibility. (R. at 14.)

At step one of the overpayment recovery waiver analysis, the ALJ found, and the Appeals Council agreed, that Plaintiff was not without fault in failing to report the award to the SSA because "there is no evidence to substantiate that the [Plaintiff] reported [the settlement income received of] $2,000." (R. at 15.) At step two of the waiver analysis, the ALJ concluded that recovery of overpayment would not defeat the "purpose of the Act by depriving income required for ordinary and necessary living expenses." (R. at 16.) He also found that "recovery of the overpayment would not be against equity and good conscience." (*Id.*) Accordingly, the ALJ found Plaintiff ineligible for SSI payment for the reviewed period and deemed Plaintiff was properly assessed overpayment recovery for the same period. (*Id.*)

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405, a district court may review the Commissioner's administrative decisions related to benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

---

[2] Exhibit B26 contains three groups of items: the check Plaintiff received from her attorneys for the Walmart settlement (R. at 167), the check Plaintiff issued to her caregiver to reimburse her for past care Plaintiff received (R. at 168), and a variety of drug store and medical office receipts (R. at 169-85). The SSA had these in its possession on September 23, 2011, when Plaintiff submitted them in person at the SSA's El Cajon field office. (R. at 228, 230, 233.) There is *no* evidence in the Record to the contrary.

(1971); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Lingenfelter*, 504 F.3d at 1035 (citation omitted). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

### III. DISCUSSION

Neither party disputes that Plaintiff received a $2,000 settlement from Walmart in September 2011 or that it resulted in an overpayment of benefits in that month. In dispute is whether Plaintiff should receive a waiver of the overpayment recovery. The ALJ found that Plaintiff was at fault because she failed to report the settlement to the SSA and received a one-month overpayment of benefits as a result. Plaintiff insists she reported the income to the SSA on September 23, 2011 and points to Exhibit B26 in the Record as proof. The ALJ's written decision is silent on this important exhibit, and the Commissioner fails to address it in her briefing.

This Court concludes that he ALJ erred at the first step of the overpayment recovery waiver analysis because—contrary to the ALJ's (and the Commissioner's) assertions—the Record *does* contain direct evidence that Plaintiff reported the settlement to the SSA on September 23, 2011—two weeks after the check was issued to her and one week before she received her next SSI payment. The ALJ further erred at step two of the analysis when he concluded that waiver of the recovery would not defeat the purpose of the supplemental security income program. Accordingly, Plaintiff's MSJ should be GRANTED, and this matter should be remanded with instructions to grant Plaintiff's request for reconsideration.

### A. The ALJ Erred In Finding That Plaintiff Did Not Report the Settlement

At the first step of the waiver analysis, "[t]he overpaid individual bears the burden of proving that [s]he was without fault." *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir.

2000); 20 C.F.R. § 416.550(a). Fault may be found, for example, when the recipient (1) makes a statement which she knows or should have known to be incorrect; (2) fails to furnish information which she knows or should have known to be material; or (3) accepts a payment which she knew or could have been expected to know was incorrect. 20 C.F.R. § 416.552(a)-(c). These are just three examples the regulations provide while stating that the fault inquiry "depends on the circumstances of the particular case." *Id.*

The ALJ found Plaintiff was at fault based only on one reason: "[T]here is *no evidence* to substantiate that the [Plaintiff] reported [the] $2,000 [Walmart settlement income]. As the undersigned [ALJ] finds that the claimant did NOT report this addition[al] amount, this is considered excess resources for the claimant."[3] (R. at 15-16 (italics added; all-caps in original).) However, this finding directly conflicts with evidence in the Record. Specifically, Exhibit B26 is a 19-page series of documents, including two cancelled checks and a variety of receipts. (R. at 167-85.) The first page is a cancelled check for $2,000 issued to Plaintiff on September 1, 2011 by her former attorney in the Walmart lawsuit. (R. at 167.) The memo line of the check reads: "Brown v. WalMart"—a clear reference to

---

[3] It appears the ALJ may also have mischaracterized the primary issue before him. In his decision, he identified the "specific issue to be decided" as whether Plaintiff's "settlement payment from Walmart is of such value to make [her] ineligible for Supplemental Security Income Payments and whether [she was] correctly assessed an overpayment . . . ." (R. at 14.) At the hearing, he specifically asked Plaintiff whether she believed she had not been overpaid in September 2011 because she had timely reported the $2,000. (R. at 252.) In response, Plaintiff corrected him: "Well, that wasn't the reason. The reason was that I have a lot of medical expenses, that's all in the file, that aren't covered by what SSI gives me." (*Id.*) In her way—as an unrepresented layperson—Plaintiff actually was seeking waiver of the overpayment collection by submitting evidence to show she could not cover her living expenses with her SSI payments let alone when combined with the Walmart settlement. Indeed, proof that her "income and resources are needed for ordinary and necessary living expenses" would have made her eligible for waiver under 20 C.F.R. § 416.550(b)(1). 20 C.F.R. § 416.553(a) (defining generally when overpayment recovery would "defeat the purpose of the supplemental security income program."). Plaintiff never contended she was not overpaid in September 2011—she simply sought waiver of overpayment recovery.

a civil lawsuit. (*Id.*) The check was issued to Plaintiff on September 1, 2011. (*Id.*) She deposited it into her bank account the next day, September 2, 2011. (R. at 70, 85.) Plaintiff testified at the hearing that she then personally gave the documents in Exhibit B26 to an SSA employee at the El Cajon field office on September 23, 2011. (R. at 233.) Indeed, because the first page of Exhibit B26 contains a "RECEIVED" stamp and is stamped "September 23, 2011," this exhibit strongly corroborates her hearing testimony. (R. at 167.)[4] The Record contains no contrary evidence or any reason to question the authenticity of these document or that Plaintiff's testimony about these events was not fully accurate.

Moreover, the Record contains two documents that further corroborate Plaintiff's testimony and Exhibit B26. It appears the SSA knew it received the Exhibit B26 documents shortly after she submitted them because the SSA immediately notified her on October 4, 2011 and then again on October 7, 2011 that she had been overpaid in September 2011. (Ex. B23 at 8, R. at 156 ("Because of your income, you were not eligible to receive Supplemental Security Income payments for September 2011."); Ex. B3, R. at 22 ("The overpayment happened in the month of 09/01/11.").)[5] The SSA's swift response on

---

[4] Indeed, the "RECEIVED" stamp on Exhibit B26 matches three stamps *and initials* from another document the SSA received two years later:



(R. at 167, 107-09, respectively.) These stamps strongly support the authenticity of Exhibit B26 and corroborate Plaintiff's testimony that she submitted these documents to the El Cajon office on September 23, 2011. Plaintiff presented Exhibit B26 to the ALJ at the hearing, and the ALJ made copies of it before he returned it to her. (R. at 234, 242.)

[5] A year later, the SSA sent Plaintiff another overpayment letter on October 25, 2012. (Ex. B5, R. at 60-64.) This time, the letter referenced a $6,000 settlement Plaintiff supposedly received in December 2011. (R. at 60.) This was an error on the SSA's part, as the $6,000 settlement was the same settlement as the Walmart settlement from September 2011. (Doc. No. 18-1 at 4 n.5.) In a letter to the SSA, Plaintiff's former counsel explained that Plaintiff

17-CV-2222-WQH(WVG)

October 4, 2011—just 11 days after Exhibit B26 was date-stamped—telling Plaintiff she had been overpaid in September 2011 further strongly corroborates Plaintiff's testimony and Exhibit B26.[6]

The documents above together establish that Plaintiff self-reported the Walmart settlement income to the SSA in a timely manner. This evidence conflicts with the SSA and Commissioner's assertions that the first time the SSA learned of the settlement was from an IRS alert.[7] It further conflicts with the ALJ's ultimate conclusion that Plaintiff did "NOT" report the income. However, although Plaintiff and the ALJ discussed Exhibit B26 document at length at the hearing (R. at 228-231, 234, 241, 242, 252), the ALJ failed to acknowledge or address it in his written decision.[8] Instead, he concluded both that that

---

received $2,000 of the total $6,000 from the Walmart settlement in 2011. (R. at 203.) Counsel also explained that the Walmart settlement was the only settlement Plaintiff had received in all of 2011. (*Id.*) Thus, Plaintiff received no settlement funds in December 2011, and the $6,000 referenced in the SSA's second overpayment letter was one and the same as the September 2011 Walmart settlement. It appears the SSA's error injected much confusion into the process, and this confusion was not Plaintiff's causing. (*See* R. at 256 (ALJ opining on confusion).) Nonetheless, the ALJ repeated the incorrect December 2011 overpayment period in his written decision. (R. at 14, 16.) And in doing so, he never acknowledged the original October 4 or October 7 overpayment notifications the SSA sent Plaintiff (R. at 22) and instead identified the October 2012 notification as the first such notice (R. at 14).

[6] This letter conflicts with notion that the SSA learned of the settlement for the first time from the IRS. (Doc. No. 3:1; R. at 113.)

[7] There is no evidence in the Record that shows when the IRS notified the SSA of the settlement. Nor does the Commissioner offer a time frame, instead choosing to be vague about when the SSA received this purportedly critical notification. The best this Court can piece together is that the notification occurred sometime prior to October 25, 2012, thirteen months after Plaintiff notified the SSA. (*See* Doc. No. 18-1 at 2-3.)

[8] Before this Court, the Commissioner again dons her blindfold and declares Plaintiff was "at fault for not timely reporting the Walmart settlement." (Doc. No. 18-1 at 6.) The Commissioner further asserts that the SSA learned about the settlement for the first time from the IRS. (Doc. No. 18-1 at 3:1; *see also* R. at 113 (SSA employee stating the same).)

there was *no* evidence that she had notified the SSA and that she had not notified the SSA of the settlement at all.  (R. at 15-16.)  To the contrary, the combination of Plaintiff's testimony, Exhibit B26, and the two October 2011 letters was strong evidence that she notified the SSA *well* before the October 2012 overpayment notice and well before the SSA learned of the settlement from the IRS.

Based on Plaintiff's uncontroverted and unopposed testimony and the evidence in Exhibit B26, Plaintiff was without fault because she reported the Walmart settlement in a timely manner.[9]  Her bank records show that she electronically received her first September 2011 SSI payment on September 1, 2011.  (R. at 85.)  Once she had the Walmart settlement in her possession, she immediately deposited the check the very next day, on September 2, 2011.  (*Id.*)  Since her SSI benefits payment had posted the same day she was issued the check, she could not possibly have notified the SSA of the settlement in time for that payment to be withheld.   Plaintiff then submitted the documents in Exhibit B26 on September 23, 2011, as evidenced by the date stamp on the first page of Exhibit B26.  (R. at 167.)  As a result, the documents in Exhibit B26 were in the SSA's possession seven days before the SSA issued her another SSI benefits payment on September 30, 2011.  (R. at 85.)  Thus, the uncontroverted evidence in the Record establishes that Plaintiff notified the SSA of the settlement in a timely manner before she received another SSI payment. All of this evidence stands unopposed and unassailed in the Record, and all of it was left undiscussed or analyzed by the ALJ and the Commissioner.  Given this uncontroverted

---

However, the Commissioner never addresses—much less directly acknowledges—Exhibit B26, a critical exhibit in the Record.  Nor does she explain how the SSA so quickly knew about Plaintiff's excess income that prompted the October 4 and 7, 2011 letters if Plaintiff had not self-reported the income.

[9] The Record contains no evidence—or even a hint—that Exhibit B26 is not what Plaintiff purports it to be or that she did not personally submit it at the El Cajon field office as she testified.  There is also nothing in the Record that counters the evidence in this exhibit.

17-CV-2222-WQH(WVG)

evidence, it is hard to imagine what more Plaintiff could have done to notify the SSA that she had received this income.

Although Defendant is correct that the role of the ALJ is to resolve conflicts in the evidence (Doc. No. 18-1 at 6:20-23),[10] the ALJ did not even acknowledge any conflict existed much less resolve one. The documents Plaintiff submitted as Exhibit B26—together with her testimony at the hearing—were in direct conflict with the Commissioner's position throughout this case that (1) Plaintiff never notified the SSA of the settlement and (2) the first time the SSA learned of the award was from the IRS. However, the ALJ failed to even identify that such a conflict existed. It is unfathomable how he failed to do so given that Plaintiff went to great pains to clearly identify the conflict during the hearing:

> CLMT: Then, they [the SSA] have declared that, "None of these incomes were reported by Ms. Brown, and we only found out about them when we got alerts from the IRS." *This is not true. And I have proof for that.*
>
> ALJ: Okay.
>
> CLMT: . . . . And then, you see, further down, there are some asterisks. Walmart. "Ms. Brown alleges that she had reported this income to SSI. This income was not reported." Well, *you have it right there in your hand*, Your Honor, *with the stamp on it* [referring to Exhibit B26]. *Reported September 23.*

(R. at 241 (emphasis added).) However, instead of identifying and resolving this clear conflict, he erroneously asserted that there was "*no* evidence to substantiate that the claimant reported [the] $2,000." (R. at 15.) While it is the ALJ's role to resolve conflicts, the first step in resolution of a conflict is *identifying* the conflict. Had the ALJ or the Commissioner doubted the authenticity of Exhibit B26 or that it was hand-delivered to the

---

[10] Based on this vague statement, it appears the Commissioner may be aware of Exhibit B26. But she never squarely addresses the very document that Plaintiff contends proves she reported the settlement in a timely manner.

SSA El Cajon office as Plaintiff testified, they could have at least acknowledged this conflict existed and provided reasons to doubt it is what Plaintiff purports it to be. Under that scenario, the Court would have had a basis to defer to the ALJ's resolution of the conflicting evidence. By not doing so here, the ALJ abdicated his role. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("When the claimant is unrepresented, . . . the ALJ must be especially diligent in exploring for all the relevant facts."). Because the ALJ did not resolve any conflict whatsoever, he is not now entitled to the deference ordinarily afforded to ALJs who actually identify and resolve conflicts in the Record. Since the ALJ ignored the conflict here, there simply is no resolved conflict to which the Court can defer.

Because the only evidence in the Record supports Plaintiff's testimony that she reported the Walmart settlement, she has met her burden to show she was not at fault. Because Plaintiff reported her income in a timely manner, she did not withhold material information from the SSA, and thus could not have been found at fault for the sole reason the ALJ stated. The ALJ's finding to the contrary was directly refuted by the Record, it was not based on substantial (or any) evidence, and it was in error as a result. Plaintiff has satisfied her burden under the first step of the waiver analysis to show she was not at fault.

2. **Recovery of Overpayment Would Defeat the Purpose of the Supplemental Security Income Program.**

At step two of the waiver analysis, the ALJ summarily concluded that he did not "find that recovery of the payment would defeat the [p]urpose of the Act by depriving . . . income required for ordinary and necessary living expenses." (R. at 16.) In light of the evidence in the Record, the ALJ's conclusion was demonstrably wrong.

Under the governing regulations, the SSA finds "adjustment or recovery of an overpayment to defeat the purpose of the supplemental security income (SSI) program if the individual's income and resources are needed for ordinary and necessary living expenses," 20 C.F.R. § 416.513(a), which can result from a situation "where the person from whom recovery is sought needs substantially all of [her] current income (including

17-CV-2222-WQH(WVG)

social security monthly benefits) *to meet* current ordinary and necessary living expenses."
20 C.F.R. § 404.508(b) (emphasis added).

The regulations further enumerate these qualifying expenses as a variety of items in four categories. They include "fixed living expenses" such as "food and clothing, rent, mortgage payments, utilities, maintenance, insurance . . . taxes, installment payments, etc." 20 C.F.R. § 404.508(a)(1). Another category is "[m]edical, hospitalization, and other similar expenses." *Id.* § 404.508(a)(2). Another includes "[e]xpenses for the support of others for whom the individual is legally responsible." *Id.* § 404.508(a)(3). And finally, they very broadly include "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living." *Id.* § 404.508(a)(4).

Here, the Record is clear that Plaintiff needs the entirety of her SSI benefits (in addition to the Walmart settlement income) to meet her ordinary and necessary living expenses. As an initial matter, the bank documents in the Record demonstrate that she receives no other income other than her SSI benefits and the occasional lawsuit settlement. (R. at 70, 74-91.) In reviewing her bank records from 2011, the only months in which her ending account balance was over $21 were the months in which she received two SSI payments. Plaintiff is barely getting by and withholding a month's benefits payment from her would impact her adversely and significantly. Her paltry monthly $830.40 benefit payment (or just $9,964.80 per year) is an objectively minuscule amount for someone to live off. That is especially true in San Diego County, where the cost of living is very high.

Additionally, Exhibit B3 contains a summary of Plaintiff's yearly living expenses from 2009, which include rent, utilities, health-related expenses, and a very conservative estimate of $45 per week for food. (R. at 43.) This expense summary is not out of line with a summary Plaintiff provided the SSA in 2014 in connection with the instant proceedings. (R. at 128.) She is also indebted to her live-in caregiver, who has been paying some of Plaintiff's living expenses. (R. at 43; *see also* R. at 127 (discussing debt owed to caregiver for medical expenses), 232 (Plaintiff testifying about reimbursing caregiver), 252 (testifying debt still owed to caregiver for medical expenses), 253-54 (ALJ

17-CV-2222-WQH(WVG)

confirming the caregiver pays medical fees on Plaintiff's behalf.) In addition to the expense summaries from 2009 and 2011, it appears Plaintiff continues to need every penny of her benefits for living expenses, as her financial status has not changed dramatically. (*See, e.g.*, R. at 127-28, 188-90, 232, 253-54.) She pays $400 per month for rent, which consumes more than half of her monthly SSI benefits, leaving her approximately $430.40 per month for all other living expenses. (*See* R. at 128, 253.) With the roughly $430.40 that remains after rent, Plaintiff purchases items for daily living and medical items. Exhibit B26 contains receipts[11] for mundane items, none of which are lavish, extravagant, or frivolous. They include things like paper towels, bottled water, and paper plates, all of which are in the "same sort or class" of food and clothing—all of these are ordinary items used for daily living. Additionally, her receipts reflect reasonable medical expenses such as pharmacy purchases, eye drops, throat lozenges, cold medication, fungal powder, bandages, and more. All of these items qualify under a category in 20 C.F.R. § 404.508.

Moreover, as her long-time doctor has noted, she has "very consistently demonstrated marked disability due to chronic leg pain . . . associated with neuropathy" which has led to "increased out of pocket expenses" due to insufficient insurance coverage. (R. at 200, 258 (Plaintiff testifying that her SSI payments do not cover her medical expenses).) It is no wonder that, as Plaintiff has explained, her SSI payments do not cover her expenses and she has relied on the generosity of a longtime friend and caregiver to support her. The Record is clear that Plaintiff needs every bit of her SSI benefits to continue to survive and that recovery of the overpayment would indeed frustrate the purpose of the supplemental security income program.

The Commissioner contends that the receipts in Exhibit B26 should be disregarded because they include "items such as paper towels, bottled water, a 24-Hour Fitness gym membership, and Chinese massage, none of which her doctor indicated were necessary."

---

[11] The Court acknowledges that many of the receipts are outside of the 2011 calendar year. Nonetheless, the receipts are reflective of the kind of living expenses Plaintiff routinely incurs.

(Doc. No. 19-1 at 6.)  This is off-mark for several reasons.  First, the Court is unaware of any requirement—and the Commissioner has not cited any authority—that a doctor needs to determine that any items are "necessary" in order for such items to qualify as "reasonable and necessary living expenses" under the Regulations.  The plain language of the Regulations indicates the opposite is true, as they specifically identify "food and clothing" as examples of "fixed living expenses"—an illustrative list that concludes with the "etc."  20 C.F.R. § 404.508(a)(1).  Doctors ordinarily do not prescribe food or clothing.  Moreover, "etc." stands for "et cetera," which means "and others; and so forth; and so on (used to indicate that more of the same sort or class might have been mentioned, but for brevity have been omitted)."  Dictionary.com, available at https://www.dictionary.com/browse/et-cetera (last visited Nov. 26. 2018).  The items listed in Exhibit B26's receipts are in the same class as food and clothing—things used for daily living.  Nothing in the Record suggests Plaintiff is living lavishly or frivolously; she is not purchasing Gucci purses or Rolex watches.[12]

Additionally, the fact that Plaintiff received an additional $2,000 of income in the *entirety* of 2011 is of no moment, does not alter her financial circumstances, and does not change the analysis above.  This additional income increased her 2011 income to a still-minuscule $11,964.80.  Regardless, this $2,000 was not really for Plaintiff's benefit, as she immediately used all of it to reimburse her caregiver for past expenditures on Plaintiff's behalf.  (R. at 168.)  Under these circumstances, receiving an additional $2,000

---

[12] Chinese massages are not frivolous when you live with chronic pain as Plaintiff does.  (*See* R. at 189, 198, 200, 230-31.)  These are simply part of the afflicted person's self-care regimen and pain management routine.  (R. at 189 ("[B]y the end of the week when the pain has built up in my feet to where I cannot sleep[,] this massage is the only that thing that gives relief, although it is painful when being done.").)  Even if a doctor has not prescribed massages, they nonetheless would fall under the Regulations' catch-all provision as "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living."  20 C.F.R. § 404.508(a)(4).  For *this* disabled person, massages are not a luxury; they are a necessity.  The Commissioner's myopic assertion to the contrary is untenable.

17-CV-2222-WQH(WVG)

in one year is not such a windfall that Plaintiff could be expected to go without her essential benefits payment for a month or be required to pay it back.

**D.     Defendant's Summary Judgment Motion Should Be Denied**

In addition to Plaintiff's summary judgment motion, Defendant's cross-motion for summary judgment is pending before the Court.  Defendant argues the ALJ properly applied the correct legal standards and supported his decision with substantial evidence. As discussed above, the ALJ erred when he ignored evidence in the Record that Plaintiff timely notified the SSA of the Walmart settlement and further erred when he concluded that recovery of overpayment would not frustrate the purpose of the SSI program.  The Record does not support either of these findings.  Accordingly, the Court recommends that Defendant's Cross-MSJ be DENIED.

**E.     Award of Relief**

In a section 405(g) case such as this, the decision, whether to remand for further proceedings is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  As the Ninth Circuit has repeatedly held, when the Record is fully developed and a remand for further administrative proceedings would serve no purpose, the Court should remand for an award in the plaintiff's favor. *See, e.g.*, *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen*, 80 F.3d at 1292.

The above principles governs here.  As the ALJ noted during the hearing, this is a one-month overpayment case that is not difficult, and Plaintiff need not be "dragged" back before an ALJ if it can be avoided.  (*See* R. at 249, 260.)  There is no need for further proceedings because the Record here is developed and clearly and one-sidedly favors Plaintiff.  Because there is nothing in the Record that casts doubt on Plaintiff's testimony

and the fact that she timely reported the Walmart settlement, there are no ambiguities or evidentiary conflicts that must be resolved.[13]

In light of this uncontroverted evidence, no other conclusion can be drawn other than Plaintiff's timely notifying the SSA of the Walmart award before she received her next SSI payment.[14]  The ALJ and Commissioner simply chose not to acknowledge or comment on that evidence.  The Record also shows both that Plaintiff was not at fault and that recovery of the overpayment would greatly impact Plaintiff and would defeat the purpose of the SSI program.  *Accord Pauloo v. SSA*, No. CV-05-1134-MAN, 2008 U.S. Dist. LEXIS 27589, at \*59-60 (C.D. Cal. Mar. 28, 2008).  Based on the foregoing, remand for further proceedings would serve no purpose and would simply "drag" a disabled, wheelchair-bound woman back before an ALJ for a case that is not very difficult.  The Court should accordingly remand with instructions to grant Plaintiff's motion for reconsideration and determination that she is entitled to waiver of overpayment recovery.

---

[13] Although the ALJ ignored the plain conflict before him and failed to develop the Record for the Commissioner, this is not reason to remand for further proceedings.  The ALJ had ample notice and opportunity to develop the Record for the Commissioner, as Plaintiff handed him Exhibit B26 and expressly told him it refuted the SSA's assertion that she had never reported the settlement.  Despite this clear notice and opportunity, he failed to do so. The Commissioner should not be granted a second bite at the apple for something it could have—and should have—done the first time. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) (noting that the "Commissioner, having lost this appeal, should not have another opportunity . . . any more than Moisa, had he lost, should have an opportunity for remand and further proceedings."); *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (reversing the denial of disability benefits where the ALJ failed in his duty to fully and fairly develop the record).

[14] This evidence also refutes the SSA's dogged assertions—despite evidence to the contrary—that the first time it learned of the Walmart award was from the IRS.

17-CV-2222-WQH(WVG)

## V.    CONCLUSION

This Court RECOMMENDS that Plaintiff's MSJ be GRANTED and that Defendant's cross-MSJ be DENIED.  This Court further RECOMMENDS that Judgment shall be entered reversing the decision of the Commissioner and remanding the matter for the following purposes:

a.    A grant of the request for reconsideration (R. at 65-69); and

b.    A reimbursement to Plaintiff of any monies withheld from her current benefits if the Commissioner has withheld any monies as recovery for the overpayment.

This Report and Recommendation is submitted to the United States District Judge assigned to this case pursuant to the provisions of 28 U.S.C § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

**IT IS ORDERED** that **no later than December 24, 2018**, any party to this action may file written objection with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive to raise those objections on the appeal.

IT IS SO ORDERED.

DATED:  November 29, 2018

Hon. William V. Gallo
United States Magistrate Judge

17-CV-2222-WQH(WVG)